**Heydar "Shaun" KHALEDI, Appellant,**

v.

**H.K. GLOBAL TRADING, LTD.; Abdol Rasoul "Ross" Khaledi; Abbas "Shahram" Khaledi; and HAR Properties, Ltd., Appellees.**

**No. 04–02–00906–CV.**

Court of Appeals of Texas, San Antonio.

Nov. 19, 2003.

the relator's other issues.

Adolfo Campero, Jr., Jose Angel Becerra, Campero & Associates, P.C., Laredo, Ted H. Roberts, M'liss Christian, Law Office of Ted H. Roberts, P.C., San Antonio, Raul A. Gonzalez, Locke Liddell & Sapp L.L.P., Austin, for appellant.

Peter L. Kilpatrick, Michael C. Boyle, Langley & Banack, Inc., Ryan G. Anderson, Ruth G. Malinas, Ball & Weed, P.C., San Antonio, Maria Elena Morales, Laredo, for appellees.

Sitting: CATHERINE STONE, Justice, PAUL GREEN, Justice, SANDEE BRYAN MARION, Justice.

## OPINION

Opinion by SANDEE BRYAN MARION, Justice.

This is an appeal from a temporary injunction order entered against appellant, Heydar "Shaun" Khaledi. In an opinion and judgment dated October 1, 2003, we

modified the trial court's order and affirmed as modified. Appellant filed a motion for rehearing and a motion to clarify our opinion. To clarify our discussion on the issue of appellees' probable right of recovery, we vacate our earlier judgment, withdraw our earlier opinion, and issue this opinion and judgment in their place.[1] Concluding our original analysis was correct, we overrule appellant's motion for rehearing.

## FACTUAL BACKGROUND

The underlying lawsuit arises from a business dispute among Heydar "Shaun" Khaledi, Abdol Rasoul "Ross" Khaledi, and Abbas "Shahram" Khaledi, all brothers who began their business relationship in the 1980s. By the 1990s, the brothers had created almost seventeen companies/partnerships ("the Khaledi Companies") involving electronics, money exchange, and construction. Throughout most of the 1990s, the three brothers worked harmoniously; however, in 1999, they began to experience personal and professional problems. As a result, Ross and Shahram agreed to buy out Shaun's business interests. The brothers also agreed to retain Shaun as a consultant for the companies. On May 11, 2000, the brothers signed a Letter Agreement detailing the sale and consulting agreement terms. On June 2, 2000, Shaun transferred his interest in the Khaledi Companies for approximately $5 million to be paid over three years pursuant to a Promissory Note, under which H.K. Global Trading, Ltd. ("H.K.Global") was the borrower and Shaun the lender. On that same day, the brothers also signed a Consulting Agreement, under which Shaun would act as a consultant to H.K. Global. Pursuant to the Consulting Agreement, Shaun was to be compensated approximately $6 million over five years. The brothers and H.K. Global also executed an Agreement Regarding Conditions to Survive Closing, which set forth other obligations related to closing the deal amongst the brothers.

Ross and Shahram personally guaranteed the debt owed under the Consulting Agreement and the promissory note (collectively, "the indebtedness"). In addition to the personal guarantees, HAR Properties, Ltd. executed deeds of trust on property located on Grant Street and Spivey Lane in Laredo, Texas to secure the indebtedness. As part of the closing on the deal, H.K. Global granted International Bank of Commerce ("IBC") a lien on the Grant Street and Spivey Lane properties. The brothers' and H.K. Global's obligations under the Agreement Regarding Conditions to Survive Closing included obtaining the release of Shaun's guarantees on certain other debt owed to IBC and another bank and obtaining the release of deeds of trust on two properties on San Mateo in Laredo, Texas that secured other debt owed to IBC. Shaun's obligations included the subordination of his liens on the Grant Street and Spivey Lane properties to IBC. Pursuant to the Promissory Note and the two deeds of trust, Shaun would release his Grant Street lien "upon retirement of 50%" of the indebtedness and he would release his Spivey Lane lien "upon payment in full" of the indebtedness.

In late 2001, Ross and Shahram paid off the IBC debt early, which removed IBC's liens from the Grant Street and Spivey Lane properties and resulted in Shaun now holding a first lien position on both properties. In late 2001, Ross and Shahram asked Shaun to again subordinate his liens to another lender, but he refused.

---

1. We grant the motion to clarify only as to appellant's question regarding the funds he is entitled to withdraw from the court's registry, and we deny the motion in all other respects.

The underlying litigation eventually ensued.

## PROCEDURAL BACKGROUND

In January 2002, H.K. Global, Ross, Shahram, and HAR Properties, Ltd. (collectively, "plaintiffs") sued Shaun on the following causes of action: fraud in the inducement of the Consulting Agreement, an equitable claim for rescission of the agreement, breach of fiduciary duties, breach of the Consulting Agreement and Agreement Regarding Conditions to Survive Closing, violations of the Deceptive Trade Practices Act, battery, and assault. Ross and Shahram also asserted several claims related to the deeds of trust that secured the indebtedness. After filing suit, H.K. Global made the payments owed to Shaun under the Consulting Agreement and the promissory note into the registry of the court, rather than directly to Shaun. In October 2002, Shaun informed his brothers of his intention to accelerate the entire indebtedness. Plaintiffs obtained a temporary restraining order to enjoin acceleration of the indebtedness and to enjoin any foreclosure of the two properties. Despite the temporary restraining order, Shaun attempted to accelerate the indebtedness and commenced foreclosure proceedings. On October 29, 2002, the trial court signed an order enjoining acceleration and foreclosure and setting a hearing on plaintiffs' applications for temporary injunction for November 7, 2002. On November 7th, the trial court heard evidence on plaintiffs' application. On November 26, 2002, the court issued its Order on Plaintiffs' Applications for Temporary Injunction ("the November 26th Order"). Shaun filed this interlocutory appeal.

On March 31, 2003, this court "provide[d] the trial court with the opportunity to make further orders, including one dissolving the order appealed from or amending the Order on Plaintiffs' Application for Temporary Injunction to correct any typographical errors or to bring the Order into compliance with Tex.R. Civ. P. 683." On May 5, 2003, the trial court issued an Amended Order on Application for Temporary Injunction ("the Amended Order"). This court allowed further briefing by the parties and consolidated Shaun's complaints regarding the November 26th Order with his complaints regarding the Amended Order (collectively, "the temporary injunction").

On appeal, Shaun asserts the trial court abused its discretion in issuing the temporary injunction because the Amended Order changes the status quo by granting relief that will irrevocably harm him, grants plaintiffs ultimate relief without a trial on the merits, and improperly grants plaintiffs more relief than they sought in their applications for injunctive relief. Shaun also asserts the findings contained in the Amended Order are conclusory, do not comply with Texas Rule of Civil Procedure 683, and are not supported by the evidence. Finally, Shaun asserts the bond set by the court in the Amended Order is not supported by the evidence and is inadequate as a matter of law.

## STANDARD OF REVIEW

■ A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Walling v. Metcalfe,* 863 S.W.2d 56, 57 (Tex.1993). A temporary injunction serves to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 204 (Tex. 2002). Accordingly, the only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial on the merits. *Walling,* 863 S.W.2d at 58; *Blackthorne v. Bellush,* 61 S.W.3d 439, 442 (Tex.App.-San

Antonio 2001, no pet.). At the hearing for a temporary injunction, the applicant is not required to establish that it will prevail on final trial. *Walling*, 863 S.W.2d at 58. A temporary injunction should issue only if the applicant establishes (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted. *Butnaru*, 84 S.W.3d at 204.

 The decision to grant a temporary injunction lies in the sound discretion of the trial court and is subject to reversal only for a clear abuse of that discretion. *Id.; Walling*, 863 S.W.2d at 58. The trial court abuses its discretion when it misapplies the law to the "established facts or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery." *State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975). All legitimate inferences from the evidence are drawn in favor of the trial court's judgment. *City of San Antonio v. Rankin*, 905 S.W.2d 427, 430 (Tex.App.-San Antonio 1995, no writ). An abuse of discretion does not exist when the trial court bases its decision on conflicting evidence and the evidence reasonably supports its conclusion. *Butnaru*, 84 S.W.3d at 211; *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex.1978).

## WHETHER AMENDED ORDER COMPLIES WITH TEXAS RULE OF CIVIL PROCEDURE 683

 Shaun asserts the trial court's findings in the Amended Order do not comply with Texas Rule of Civil Procedure 683 because they are conclusory. Every order granting a temporary injunction must "set forth the reasons for its issuance." TEX.R. CIV. P. 683. The procedural requirements of Rule 683 "are mandatory, and an order granting a temporary injunc-tion that does not meet them is subject to being declared void and dissolved." *Qwest Communications Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex.2000). Here, the trial court found that Shaun's failure to release and subordinate prevented the plaintiffs "from realizing the significant loan values in such unique properties," and placed an extreme hardship and/or significantly impaired plaintiffs' ability to assist in paying amounts owed under the promissory note and to tender monies into the court's registry. The court also found that the plaintiffs' business plan and ability to obtain financing on the properties were "adversely affected in a way that cannot be effectively measured in dollars" if the injunction is not issued. We hold these findings are adequate under Rule 683.

 Rule 683 also requires that the order define, in reasonable detail, the act to be enjoined. TEX.R. CIV. P. 683. Shaun contends the Amended Order is vague for several reasons. First, he complains that the language in the order enjoining him from "failing to subordinate [his] deed of trust liens in the Spivey Drive Property to a lender selected by Plaintiffs, will be sooner than May 25, 2003" is not clear and precise because he does not know what action or inaction is required and the order fails to specify when plaintiffs must identify a lender. Second, Shaun contends the requirement that he "release and subordinate (or execute an acknowledgment of subordination) by May 25, 2003" is vague because the term "acknowledgment of subordination" has no uniform meaning.

 An injunction order must be as definite, clear, and precise as possible and should inform the defendant of the acts he is restrained from doing, without leaving anything for further hearing. *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.*, 156 Tex. 7, 291 S.W.2d 697, 702 (1956); *Bankler v. Vale*, 75 S.W.3d 29, 33

(Tex.App.-San Antonio 2001, no pet.) (quoting *San Antonio Bar Ass'n* ). A defendant should not be required to draw inferences or conclusions about which persons may differ. *San Antonio Bar Ass'n*, 291 S.W.2d at 702. *Id.* "But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *Id.*

The temporary injunction order here is not vague; it simply requires that Shaun fulfill his obligations under the Agreement Regarding Conditions to Survive Closing. When read in its entirety, the Amended Order describes in reasonable detail the acts Shaun must undertake—subordinate his Spivey Lane lien to a lender selected by plaintiffs not later than May 25, 2003 or acknowledge that the lien will be so subordinated if a lender is not selected by May 25, 2003. The order provides plaintiffs with flexibility in finding an appropriate lender. The order also protects Shaun against any sanctions for not subordinating his lien if a lender is not found by May 25, 2003 by requiring merely that he acknowledge the subordination of his lien to a lender if and when one is obtained. *See Texas A & M Univ. Sys. v. Luxemburg*, 93 S.W.3d 410, 426 (Tex.App.-Houston [14th Dist.] 2002, pet. denied). Finally, the requirement that Shaun execute an acknowledgment of subordination prevents him from escaping his obligation to subordinate if a lender is not found by May 25, 2003. *See Republic Western Ins. Co. v. State*, 985 S.W.2d 698, 706 (Tex.App.-Austin 1999, pet. dism'd w.o.j.).

We hold that the Amended Order adequately complies with the requirements of Rule 683.

## PROBABLE RIGHT OF RECOVERY

■ To prevail in their request for a temporary injunction, the plaintiffs had to demonstrate a probable right to recover at trial on the merits and probable injury in the interim if the injunction is not granted. *Walling*, 863 S.W.2d at 57; *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex.1968). An injunction is not improper merely because the evidence presented below conflicted; it need only reasonably support the movant's complaints. *Miller Paper Co. v. Roberts Paper Co.*, 901 S.W.2d 593, 598 (Tex.App.-Amarillo 1995, no writ).

■ Shaun first asserts plaintiffs cannot show a probability of success on any of their causes of action. To establish a probable right to recovery, plaintiffs must have a cause of action for which they may be granted relief. *Walling*, 863 S.W.2d at 58; *Universal Health Services, Inc. v. Thompson*, 24 S.W.3d 570, 577 (Tex.App.-Austin 2000, no pet.). Because the injunction here arises from a dispute over obligations contained in the promissory note, the deeds of trust, and the Agreement Regarding Conditions to Survive Closing, plaintiffs were required to establish their probable right of recovery under any causes of action related to those documents. Thus, it is not relevant to our inquiry here whether plaintiffs could establish a probable right of recovery on causes of action related to the Consulting Agreement (*i.e.*, fraudulent inducement, breach of fiduciary duty or of the agreement, and recision).

■ Shaun next asserts plaintiffs cannot show a probability of success on their causes of action for breach of the Agreement Regarding Conditions to Survive Closing and the deeds of trust. Both the November 26th Order and the Amended Order arise from the parties' disagreement over the circumstances under which Shaun must subordinate his liens on the Grant

Street and Spivey Lane properties. No one disputes that Shaun was required to subordinate his liens when the deal between the brothers first closed. He did, indeed, subordinate his liens to IBC. The disagreement arose when Ross and Shahram paid off the IBC debt, which resulted in Shaun's taking a first lien position on the properties. Ross and Shahram insist that, under the Agreement Regarding Conditions to Survive Closing, Shaun's obligation to subordinate is not limited to subordinating his liens only to IBC or to any single lender. According to Ross and Shahram, Shaun must continue to subordinate his Spivey Lane lien to "any lender" they select until the indebtedness secured by that lien is paid. They also assert that because fifty percent of the indebtedness has been paid, Shaun must immediately release his lien on the Grant Street property.

Shaun, on the other hand, interprets the agreement as requiring him to subordinate his liens for the sole purpose of facilitating the release of his personal guarantees and the release of the San Mateo liens. Because he subordinated his liens to IBC to accomplish these objectives, Shaun concludes his obligation to subordinate his lien on the Spivey Lane property no longer exists; thus, plaintiffs cannot show a probable right to recovery. Shaun also asserts plaintiffs have not paid fifty percent of the indebtedness; therefore, he is not obligated to release his lien on the Grant Street property. Shaun contends that because plaintiffs have made their payments into the court's registry, rather than directly to him, he has not received, free and clear, fifty percent of the amounts due him. He also argues that if plaintiffs prevail on their suit to rescind the Consulting Agreement and recover all amounts paid to him pursuant to that agreement, then plaintiffs will not have met the fifty percent threshold.

The question of probable right of recovery involves construction of the Letter Agreement, the Agreement Regarding Conditions to Survive Closing, the promissory note, and the deeds of trust. Under the Letter Agreement, the plaintiffs agreed to pledge the Grant Street and Spivey Lane properties to secure the indebtedness, Shaun "understood" the properties were subject to certain liens and encumbrances and agreed to accept the security subject to these liens and encumbrances, and all parties agreed the Grant Street property would be released upon payment of fifty percent of the indebtedness and the Spivey Lane lien would be released upon full payment of the indebtedness. The Agreement Regarding Conditions to Survive Closing provides as follows:

> Upon request of [Ross, Shahram, and H.K. Global], and in order to accommodate the releases of [Shaun] from personal guarantees and the releasing of the deeds of trust upon 8900 San Mateo and 9001 San Mateo, Laredo, Texas, with [IBC], [Shaun] agrees to subordinate [his] liens upon [the Grant Street and Spivey Lane properties], to liens for the benefit of *a Lender selected by [Ross, Shahram, and H.K. Global]*. (Emphasis added.)

Pursuant to the Promissory Note and the two deeds of trust, Shaun agreed to release his Grant Street lien "upon retirement of 50%" of the indebtedness and release his Spivey Lane lien "upon payment in full" of the indebtedness. The court also considered correspondence between the parties and their representatives in which Shaun expressed a willingness to subordinate his liens on the properties. During the hearing, Shaun's counsel conceded Shaun was "required to subordinate if [the plaintiffs] are paying without security...."

We hold the trial court could have reasonably interpreted the language in the Letter Agreement, the Agreement Regarding Conditions to Survive Closing, the promissory note, and the deeds of trust as expressing an intent that Shaun continue to subordinate his liens to any lender selected by the plaintiffs until the payment terms contained in the promissory note and deeds of trust were satisfied. Based on the record before the trial court at the time of the temporary injunction hearing, we conclude the trial court did not abuse its discretion because an interpretation of these documents provide a reasonable basis for concluding that plaintiffs have a probable right of recovery.

The plaintiffs also presented evidence that, as of November 2002, $6,890,642.04 of the indebtedness had been paid either directly to Shaun or into the court's registry. This represents more than fifty percent of the total indebtedness of $11,011,975.41. At the injunction hearing, Shaun did not controvert this evidence. However, his argument on appeal that he should not be required to release his lien on the Grant Street property until the amount of the payments in the court registry are paid over to him has merit. The November 26th Order specifically provides that upon release of the Grant Street lien and subordination of the Spivey Lane lien, plaintiffs shall make all promissory note payments directly to Shaun and "any note payments presently on deposit in the registry of the court shall be immediately released to" Shaun. The Amended Order did not change these provisions. Therefore, we do not consider Shaun's complaint that he has not yet actually received fifty percent of the indebtedness because, upon his compliance with the temporary injunction, the funds held in the court's registry that are attributable to the note payments will be released to him pursuant to the terms of the injunction.

## INJURY IN THE INTERIM

 Probable injury in the interim is established by tendering evidence of imminent harm, irreparable injury, and inadequate legal remedy. *Miller Paper Co.*, 901 S.W.2d at 597. Damage that cannot be easily calculated, such as the demise of an existing business, may constitute irreparable injury. *Miller Paper Co.*, 901 S.W.2d at 602. Also, a court may grant equitable relief when a dispute involves real property. *Butnaru*, 84 S.W.3d at 211.

 Shaun asserts plaintiffs did no more than present a possibility of economic harm if he did not release and subordinate his liens. Shaun also contends the evidence is legally and factually insufficient to support the trial court's findings that (1) when the June 2000 closing documents were executed, the parties contemplated that release and subordination of the liens would assist the plaintiffs in using the loan values on the properties to facilitate their payment obligations to Shaun; (2) Shaun's failure to release and subordinate prevents plaintiffs from realizing significant loan values in such unique properties; and (3) Shaun's failure to release and subordinate places an extreme hardship and/or significantly impairs plaintiffs' ability to facilitate their payment obligations.

At the temporary injunction hearing, the plaintiffs produced evidence that, had Shaun released and/or subordinated his liens, the companies would be able to use the property as collateral to obtain needed financing. Edward Beckelheymer, H.K. Global's chief financial officer, testified that no other entity was willing to lend the company money on the properties so long as Shaun held a first lien position on the properties. Beckelheymer stated the company needed the money now, and could not

wait for a final trial on the merits. He said the ability to use the properties would enable the company to obtain financing at current lower interest rates, obtain a letter of credit or pay in advance for products at a discount, pay Shaun the money owed him under the Consulting Agreement and promissory note, pay off Ross's and Shahram's personal income tax debt, and retire other debt. He felt there was a significant present need to utilize the loan value of the properties, and if Shaun foreclosed on the properties, it "would almost virtually close us down." We conclude that the record supports the trial court's finding that plaintiffs would suffer irreparable injury if the injunction was not granted.

■ Shaun also argues that plaintiffs' injury, if any, is compensable through monetary damages. "The existence of a remedy at law is not ground for denial of injunctive relief unless the legal remedy is as practical and efficient to the ends of justice as the equitable remedy." *Irving Bank & Trust Co.*, 544 S.W.2d at 688. The record establishes the plaintiffs' current need to obtain financing and that such financing is contingent on the lien status of the properties. Under these circumstances, the injury suffered by plaintiffs in the interim cannot be adequately compensated by monetary damages.

### STATUS QUO

■ Shaun contends retaining his current first lien positions is the status quo because an "ultimate issue" in the lawsuit is whether he is entitled to do so. According to Shaun, the Amended Order disrupts, rather than preserves, the status quo because it orders him to subordinate his liens before a final hearing on the merits of the case. Plaintiffs, on the other hand, assert the Amended Order restores the status quo that existed before this dispute. According to the plaintiffs, the

status quo to be maintained is the predispute arrangement whereby they would have access to the loan values of the properties via the release of the Grant Street lien and subordination of the Spivey Drive lien. Plaintiffs contend their dispute with Shaun over the Consulting Agreement does not justify his refusal to release and subordinate these liens, and re-establishing this status quo requires Shaun to simply fulfill his obligations.

■ Status quo is defined as "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Tex. v. Robertson Transports, Inc.*, 152 Tex. 551, 261 S.W.2d 549, 553–54 (1953). We hold that the trial court's temporary injunction preserves the status quo by ordering that the status of Shaun's lien positions continue as they existed when the parties executed the various closing documents. It was Shaun's refusal to continue to subordinate his liens that altered the parties' relationship. Therefore, the status quo is the relationship of the parties as it existed when Shaun held a second lien position on the properties.

### IRREVOCABLE HARM TO SHAUN

■ Shaun asserts that complying with the Amended Order will cause him irrevocable harm if the plaintiffs do not prevail at trial. A review of the record reveals that the only evidence offered in support of harm to Shaun was that he refused to subordinate because his brothers sued him. Beckelheymer opined that placing Shaun in a second lien position would simply return him to the same position he was in before the litigation ensued. On appeal, Shaun does not explain how losing his first lien position and returning to a second lien position will result in irrevocable harm. A determination of whether the damage to the plaintiffs outweighed any damage to

Shaun was within the trial court's province. *Home Sav. of Am.,* 737 S.W.2d at 60. The record reveals nothing to justify this court's disturbing the trial court's decision.

## RELIEF REQUESTED BY PLAINTIFFS

■ Shaun contends the Amended Order grants more relief than requested by plaintiffs because their pleadings did not ask for an injunction relieving them of their payment obligation to him under the Consulting Agreement or the promissory note. More specifically, Shaun complains about those portions of the Amended Order that (1) allow plaintiffs to make payments under the promissory note into the registry of the court, rather than directly to him; (2) and provide that if he does not release his Grant Street lien and subordinate his Spivey Lane lien by May 25, 2003,[2] the trial court will consider a sue sponte order that relieves plaintiffs from making further court-ordered payments under the Consulting Agreement into the registry of the court pending disposition of the underlying lawsuit. Shaun also contends the Amended Order grants relief to the plaintiffs amounting to a final disposition of one of the key issues in the case, that is, a determination of the parties' respective positions under the promissory note and the Consulting Agreement.

■ The purpose of a temporary injunction is to preserve the original status of the property pending a final decision on the rights of the parties. *Elliott v. Lewis,* 792 S.W.2d 853, 854 (Tex.App.-Dallas 1990, no writ); *Getz v. Boston Sea Party of Houston, Inc.,* 573 S.W.2d 836, 837 (Tex. Civ.App.-Houston [1st Dist.] 1978, no writ). A trial court may grant a temporary injunction to preserve the status quo pending trial even though the applicant's prayer does not include a claim for equitable relief following determination of the merits. *Walling,* 863 S.W.2d at 57.

■ In their petition, plaintiffs asserted claims for breach of the Consulting Agreement and Agreement Regarding Conditions to Survive Closing, and they offered to continue to make their payments under the Consulting Agreement and promissory note into the court's registry. Generally, a trial court does not abuse its discretion if it grants a temporary injunction that exceeds the relief the applicant seeks so long as the terms of the injunction are necessary to give full effect to the injunction sought. *Biodynamics, Inc. v. Guest,* 817 S.W.2d 128, 130 (Tex. App.-Houston [14th Dist.] 1991, writ dism'd by agr.). Thus, although plaintiffs did not specifically ask that they be relieved of their obligation to make their payments directly to Shaun, the trial court had discretion to preserve the status quo by ordering that the indebtedness payments be made into the court's registry so long as the plaintiffs demonstrated their probable right to recovery and probable injury in the time before trial. *See Walling,* 863 S.W.2d at 58.

■ However, the trial court also stated it would sue sponte relieve plaintiffs of their obligation to make payments owed under the Consulting Agreement if Shaun did not release or subordinate the liens by a date certain. As even the plaintiffs concede on appeal, the Consulting Agreement is not pertinent to the issue that is the subject of the application for temporary injunction, which is whether the status quo is preserved by Shaun's subordination and release of his liens. The Consulting Agreement is pertinent only to an ultimate issue at trial, which is whether Shaun breached the terms of the agreement and

---

**2.** This court stayed this portion of the injunction pending disposition of this appeal.

whether plaintiffs are entitled to rescission of the agreement. Until that issue is resolved at a trial on the merits, plaintiffs are obligated to continue making those payments. Thus, relieving plaintiffs of their payment obligations would have amounted to a determination of the merits of plaintiffs' claims and any recovery they might be entitled to under those claims.

## ADEQUACY OF BOND

 The Amended Order provides that, "[t]he bond by Plaintiffs ... shall be those payments currently in the Registry of this Court paid by HK Global and hereafter ordered to be paid, as well as the additional $500 security previously posted...." Shaun contends a bond in the amount of $500 is not supported by the evidence and is insufficient as a matter of law. The purpose of a bond is to provide protection to the enjoined party for any possible damages occurring as a result of the injunction. *Bayoud v. Bayoud,* 797 S.W.2d 304, 312 (Tex.App.-Dallas 1990, writ denied). The determination of the adequacy of the bond set by the trial court is to be made on a case-by-case basis based upon the record before the reviewing court. *Maples v. Muscletech, Inc.,* 74 S.W.3d 429, 431 (Tex.App.-Amarillo 2002, no pet.). In conducting such a review, we must bear in mind that the amount of bond required on the issuance of a temporary injunction rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion. *Id.*

The record does not show that Shaun made or filed any objections to the trial court's setting the bond as it did. Also, at the April 25, 2003 hearing, following this

court's order of March 31, 2003, Shaun's counsel discussed a clerical error[3] regarding the $500 bond but did not object to the amount of the bond or complain to the court that the bond was inadequate. Therefore, this issue has not been preserved for appeal. *See Ex parte Coffee,* 160 Tex. 224, 328 S.W.2d 283, 292 (1959); *Matagorda County Hosp. Dist. v. City of Palacios,* 47 S.W.3d 96, 104 (Tex.App.-Corpus Christi 2001, no pet.); *Speedman Oil Co. v. Duval County Ranch Co.,* 504 S.W.2d 923, 931 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.); TEX.R.APP. P. 33.1.

## CONCLUSION

We hold that the trial court erred in considering a sue sponte order to relieve plaintiffs of their payment obligations and we modify the Amended Order on Application for Temporary Injunction to delete that portion of the order. We affirm the trial court's order as modified.

---

3. The November 26th Order stated the Shaun had posted the $500. This error was corrected in the Amended Order to properly state that plaintiffs had posted the $500 bond.