Opinion issued November 30, 2023



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00485-CV

_____

**BEACHSIDERS, LLC, D/B/A BEACHSIDERS BAR & GRILL, Appellant**

**V.**

**ERIC VAUGHAN AND DENISE VAUGHAN, Appellees**

---

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Case No. 23-CV-0819**

---

## MEMORANDUM OPINION

This appeal involves a dispute between Appellees Eric and Denise Vaughan, two Galveston, Texas homeowners, and Appellant Beachsiders, LLC concerning a bar Beachsiders operates near the Vaughans' home. Alleging the bar interferes with the use and enjoyment of their home, the Vaughans filed suit against

Beachsiders for private nuisance. They secured an ex parte temporary restraining order and, subsequently, a temporary injunction preventing Beachsiders from, among other things, playing music outside and ordering the bar to take affirmative action, including erecting a wooden privacy along its property.

Beachsiders filed an interlocutory appeal challenging the trial court's temporary injunction,[1] and later an opposed motion to stay the portion of the temporary injunction ordering it to erect a fence along its property. We granted the motion to stay on August 10, 2023.

In six issues, Beachsiders argues (1) the trial court abused its discretion in granting the temporary injunction, (2) the temporary injunction violates Texas Rule of Civil Procedure 683, (3) the trial court abused its discretion in granting injunctive relief not sought by the Vaughans, (4) the trial court abused its discretion by issuing injunctive relief that destroys the status quo, (5) the trial court violated Beachsiders' constitutional rights, and (6) the trial court abused its discretion in setting the temporary injunction bond at $2,500.

Because the temporary injunction violates Texas Rule of Civil Procedure 683, the injunction is void. We dissolve the injunction and remand the case to the trial court.

---

[1] Section 51.014(c) of the Texas Civil Practice and Remedies Code permits an interlocutory appeal of an order granting a temporary injunction. TEX. CIV. PRAC. & REM. CODE § 51.014(4).

## Background

Claire and Christopher Downings[2] deeded their property at 4229 13 Mile Road in Galveston, Texas to Appellant Beachsiders, LLC d/b/a Beachsiders Bar and Grill in 2010. The property is in a commercially zoned area on the west end of Galveston, Texas. Adjacent to the property is a vacant strip of land owned by Texas Parks and Wildlife. And adjacent to the Texas Parks and Wildlife property is a house owned and occupied by Appellees Eric Vaughan and his wife, Denise Vaughan. The Vaughans have owned the house since July 2015, having moved there full-time in 2016.[3]

After the Downings deeded the property to Beachsiders in 2010, the Downings operated the property as a short-term rental home. Eric Vaughan testified that in July 2022, he learned the Downings planned to start operating a bar on the Beachsiders property. He learned the Downings were seeking an alcoholic beverage permit from the Texas Alcoholic Beverage Commission and that they had obtained a loudspeaker permit from the City of Galveston. The loudspeaker permit was issued to Chris Downing/Beachsiders Bar at 4229 13 Mile Road and approved

---

[2]     The Downings own Beachsiders, LLC. While they are named as defendants in the underlying litigation, they are not parties to the present appeal.

[3]     The Pirates Beach West planned community, where the Vaughans' home is located, is zoned residential, while the Beachsiders property is zoned commercial. Prior to their purchase of their Galveston home in 2015, the Vaughans rented the property on occasional weekends and holidays as a vacation home for their family.

the use of a loudspeaker outside the Beachsiders bar from 12 p.m. to 10 p.m., starting on April 18 and through June 30, 2023.[4]

Beachsiders Bar & Grill opened on May 6, 2023. The Vaughans complained to the City of Galveston Police Department that the bar was playing music in violation of the loudspeaker permit, but to their knowledge, no official action was taken "to enforce the permit."

Shortly after, on May 23, 2023, the Vaughans filed an Original Petition, Application for Temporary Restraining Order, and Temporary Injunction against Beachsiders and the Downings asserting a claim for private nuisance. Stating the Downings and Beachsiders "opened [the] bar after obtaining the requisite state and municipal permits," the Vaughans alleged that "the ongoing and offensive manner in which the bar ha[d] been operated ha[d] become an intolerable nuisance" that "substantially interfere[]d with the use and enjoyment of their home." The Vaughans alleged Beachsiders had "violated the City of Galveston's sound ordinances on multiple occasions" and that "loudspeakers mounted on a cabana in an outside entertainment area" were directed at the Vaughans' home subjecting

---

[4] The loudspeaker permit required the permit holder to comply with "the decibel level or hours restrictions of Galveston Municipal Code 24." The permit is for noise between the hours of 12 p.m. and 10 p.m. The loudspeaker permit includes the notation that it can be revoked for violation of the city's decibel level or hours requirements, if the permit holder causes "imminent breach of the peace," if the holder uses "fighting words" or obscene language, or if the holder directs amplified speech at someone "in a manner likely to harass, abuse or torment that person." The permit is not dated but indicates it is a "2023 Quarter Two Permit."

4

them to loud noise. They also alleged bar patrons had been "observed consuming alcohol off-premises" in violation of Section 28.10 of the Texas Alcoholic Beverage Code and congregating "outside in a loud and boisterous" and often "drunken manner," that Beachsiders had not screened its dumpsters as required by law, that congestion had resulted from "inadequate parking," and that "criminal activity" was "likely [to] increase." They alleged that Beachsiders' patrons, "obviously advised by employees of Defendants, have acted in a taunting and threatening manner" toward them. The Vaughans alleged these activities were causing "unreasonable discomfort and interruption to their normal use" of their home resulting in "loss of use and enjoyment of their property, probable diminution in value, as well as their privacy."

The Vaughans sought a temporary restraining order, temporary injunctive relief, and recovery of damages from $200,000 to $1,000,000. In addition to monetary damages, the Vaughans sought to enjoin

> Defendants, their officers, agents, representatives, successors, assigns, employees, trustees, and any person acting in concert with them, from taking further action to play loud music beyond reasonable levels and time periods as required under the City of Galveston's ordinances on sound, allowing or employing bands or other musicians to cause music to be amplified outside of the [Beachsiders] Property.

The Vaughans did not request a permanent injunction. The trial court granted an ex parte temporary restraining order against Beachsiders and the Downings on May 23, 2023, and it set a temporary injunction hearing for May 31, 2023.[5]

**The Temporary Injunction Hearing**

The trial court conducted a temporary injunction hearing on May 31, 2023. During the hearing, Eric Vaughan testified that he and his wife live fulltime at their home in Galveston. Before purchasing the property, they rented the house every July 4 from 2001 to 2015.[6] The back of the house has an elevated deck with a pool and a barbecue grill and an unobstructed view of the ocean. Vaughan testified that at times, they can hear the ocean from the deck. He estimated the house is about 400 to 500 feet from the beach.

Vaughan testified that "as of the day that the bar opened, every single day, seven days a week, there was loud speaker music playing audibly that we could hear in our yard, in our property, on our back porch." He testified he was "very bothered" by the music. According to Vaughan, a speaker mounted on the bar's cabana is "literally pointed directly" at his house. He testified he knows the music

---

[5] Among other things, the temporary restraining order enjoined Beachsiders from violating the City of Galveston's noise ordinances; playing music outside the bar; allowing bands or other musicians to play or cause music to be played "at any time or any day" on Beachsiders' property, allowing patrons to congregate outside Beachsiders in a "loud and boisterous manner," and allowing patrons to violate section 28.10 of the Texas Alcoholic Beverage Code by leaving Beachsiders while possessing alcohol.

[6] The original petition indicates the Vaughans first began to rent the house in 2002.

is "coming from [Beachsiders because] there's nothing else around except the state park and the ocean." He testified he is "reasonably certain" the music he heard was coming from Beachsiders.

Vaughan explained he recorded videos to document times when he could hear Beachsiders playing music after 10 p.m. The videos Vaughan recorded from his house on May 15, 2023 at 10:28 p.m., on May 17, 2023 at 6:01 a.m., on May 18, 2023 at 10:09 p.m., and on May 23, 2023 at 10:05 p.m. were played during the hearing. Vaughan testified that even though it is hard to hear music on some of the videos, there is no doubt the music was playing, prompting him to make the recordings. Vaughan testified the recordings, which he recorded with his iPhone, do not accurately reflect the volume of the music, and that the music sounds "much lighter on the video than it was in reality."[7]

Vaughan testified he was not simply complaining that the music was played after 10 p.m. Rather, he does not want the music to be played at all. He stated, "Having music playing seven days a week whether we like it or not, whether it interferes with our enjoyment of our house is not something that we want to adapt to. That's not what we expect. It's not what we bought the house for. It's not how we enjoy it."

---

[7] A review of the recordings reflects music that, when audible, is not loud. All but one of the videos were taken from the deck of Vaughan's house.

7

Additional videos, which Vaughan recorded after the temporary restraining order issued on May 23, 2023, were also played during the hearing. On May 29, 2023, Vaughan recorded three videos that purported to show bar patrons standing outside the bar—some on the Texas Parks and Wildlife land next to the bar—with alcoholic beverages. No music was audible. On May 30, 2023, Vaughan also recorded a video at 8:46 p.m. of music purportedly playing from the loudspeakers at the Beachsiders cabana. He testified he had no doubt that the music was coming from Beachsiders, given that he shot the video from his own property this time closer to the bar than when he shot the other videos.[8]

Vaughan testified that because of the activity at Beachsiders, he now sets his home alarm at night and he had to buy window coverings for his house's back windows "so there's no exposure of people at any time walking around in [his] house to bar patrons out in the backyard." He stated,

> The music playing every single day whether you like it or not, the music playing beyond hours, in the morning, certainly the engagement with people. . . . We're only 25 days since the bar opened. There's advertisements of bands being put outside. I mean, the audacity of that advertising alone just shocks me. Hey neighbors, we're going to be putting a band out in the yard, you know.

---

[8] Vaughan testified that the property behind and to the left of his house is operated as a short-term rental property. In addition, the property behind and to the right of his house was, at least recently, a short-term rental. He conceded that "Airbnbers" can be loud and rambunctious when they visit Galveston.

Vaughan stated he believes the bar affects his home's value,[9] his security,[10] and it "certainly affects the enjoyment of [the] home." He explained he is not trying to shut down Beachsiders. He simply wants Beachsiders to keep its patrons inside the bar and not subject the Vaughans to music seven days a week. Vaughan testified that while he never complained when the Beachsiders property was a short-term rental, his complaint now stems from the fact that the noise is "seven days a week and ongoing with the potential for increased interference in the way of bands."

Vaughan testified he and his wife can hear the music with the house's external doors closed. He and his wife hear it lying in bed. According to Vaughan, they can "hear the bass reverberating in the pillow[.]" He acknowledged they do not have video or audio that reflects the music is audible while they are in bed with the doors and windows closed.

Vaughan testified he has no evidence the music from Beachsiders exceeded the legal decibel limit and, in fact, he does not know whether it did. According to Vaughan, Beachsiders plans to provide live amplified music outdoors on Friday and Saturday nights, which he testified will substantially interfere with the use and

---

[9] Vaughan testified that his house was on the market at the time of the hearing.

[10] Vaughan testified about a myriad of security measures at his house, such as alarms, lights, cameras, and motion detectors, and stated no one connected with Beachsiders has "tripped" the security measures.

enjoyment of his property. Vaughan stated he does not want a band to play outside, even if it complies with the decibel limit. "We're not okay with on an outgoing regular basis having a bar operate in our backyard with drinks outside, patrons drinking till 2:00 o'clock in the morning, bands playing every Friday . . . or Saturday regardless of our plans, music that's running seven days a week. This is the essence of why we're here."

Vaughan stated his property is not being harmed beyond repair, but his quiet enjoyment of the property is. He has seen bar patrons consume alcohol on the Texas Parks and Wildlife land next to his property. He testified that taunting by a bar patron who gestured at him is the "most egregious offense" he witnessed. Vaughan believes he has been harassed and arguably, abused, by the activity at Beachsiders.

Vaughan concedes that Beachsiders has a right to operate as a bar, but he does not want it brought into his backyard. He testified that even though no patrons have stepped on his property, Beachsiders is "audibly and visibly" in his backyard. He stated that even though he made complaints to the City of Galveston Police Department about Beachsiders violating the loudspeaker hour restrictions on

the loudspeaker permit and the temporary restraining order, the City took no action.[11]

At the conclusion of the hearing, Vaughan's counsel argued that Beachsiders' conduct "shows a pattern of violations that would be offensive to anyone, particularly someone who's invested significantly in their home, to live a life near the beach, a quiet enjoyment to enjoy—to sit out on their deck." He argued:

> [A]nyone of any ordinary sensibilities would find that offensive and find that detrimental to their home -- detrimental to the use and enjoyment of their home. That's all he's doing. He's trying to zealously guard his right to the use and enjoyment of his home in the manner to which he's been accustomed, to the manner which existed prior, which is what an injunction is about. It's about preserving the status quo until we get to the end.

Beachsiders responded that Vaughan had not established there was noise emanating from the bar beyond the allowed decibel level. Beachsiders' counsel argued Vaughan acknowledged "Yes, there's beach noise. You can park on the beach. He concedes to that. Music could be coming from anywhere in any direction, and we have to take his word for it[?]" "He has no evidence of any

---

[11] John Drewry, Jr. also testified during the temporary injunction hearing. He is an attorney employed by the Vaughans' counsel's firm. Drewry used to live in Galveston near a bar called Beachsiders, but not the one at the location near the Vaughans' home. Drewry testified the bar was downstairs and the Downings lived upstairs. Behind Beachsiders was a lot the Downings fenced in, which was close to Drewry's home. Drewry testified that sometimes Beachsiders played music after 10 p.m. and on one occasion it played throughout the night and into the next morning. Drewry did not complain about the music.

11

decibel level, nor does he have any evidence that the decibel level is exceeding the waves crashing." Nor was there evidence that anyone had tampered with the Vaughans' home.

Beachsiders' counsel also argued the Vaughans had not shown a probable right of recovery "because the standard is the ordinary sensibilities of a person. Noises go on outside. Sometimes in these videos, there are birds, crickets, waves, and wind; and sometimes its lightly playing music. And that is within the bounds of the law." He argued that what the Vaughans were requesting in essence would hinder "the business" of the bar and disallow Beachsiders "from a revenue stream." To the extent the court granted the temporary injunction, Beachsiders requested that the Vaughans be ordered to post a bond of $250,000 or more.

At the conclusion of the hearing, the trial court indicated it would take the matter under advisement, and asked the Vaughans to submit a proposed order.

**The Temporary Injunction**

On June 13, 2023, the trial court issued a Temporary Injunction. The following day, on June 14, 2023, it issued an Amended Temporary Injunction.[12] In its entirety, the Amended Temporary Injunction provides:

> CAME TO BE CONSIDERED, the Request for Injunction Relief filed by Plaintiff Vaughan ("Plaintiff"), and the Court

---

[12] The Amended Temporary Injunction corrected a numbering error in section (F) and provided a different trial date.

considered the Request and the arguments of counsel, and finds that it should be **GRANTED**.

In support of its decision, and based on Plaintiff's testimony and other evidence presented, the Court hereby finds that:

Defendant Beachsiders, LLC d/b/a Beachsiders Bar and Grill has conducted business operations which have interfered with Plaintiff's private use and enjoyment of his residence.

It is accordingly hereby **ORDERED** that Defendant Beachsiders, LLC d/b/a Beachsiders Bar and Grill, or any and all of its' [sic] agents who received actual notice of this Order, are also hereby ordered and restrained, from the date of this Order until the date of trial as follows:

(A) Defendant is to remove all loudspeakers from the elevated areas of the "cabana" or "outside" portion of the premises;

(B) Defendant shall not aim any loudspeakers in the direction of the "neighborhood";

(C) Defendant shall erect a wooden privacy/security fence along the entire length of the property line which boarders [sic] the Texas State Park property/non-commercially zoned properties (i.e. the property line closest to the "neighborhood"). The privacy fence shall be erected within 90 days of the date of this order[;]

(D) Defendant shall not allow patrons to leave the property located 4229 13 Mile Road, Galveston, Texas 77554, while possessing alcohol in violation of Tex. Alc[o]. Bev. Code § 28.10 (b); [13]

---

[13] Section 28.10 of the Texas Alcoholic Beverage Code forbids a mixed beverage permittee from allowing a patron to "take any alcoholic beverage purchased on the licensed premises from the premises where sold" with limited exceptions. TEX. ALCO. BEV. CODE § 28.10.

(E)     Defendant shall not allow or employ bands or other musicians to play or cause music to be played outside at any time on any given day on Defendants' property located at 4229 13 Mile Road, Galveston, Texas 77554; and

(F)     Defendant shall continue to strictly adhere to, and refrain from violating, any and all ordinances and/or permits issued by the City of Galveston, Texas.

It is further ORDERED that the trial on the merits of this matter is set for trial on the 2nd day of November, 2023, at 9:00 am with the Pretrial date 10-2-23 at 9 am.

The Order shall become effective when Plaintiffs deposit with the Clerk a bond in the amount of $2500.00 in conformity with the law.

The Clerk shall forthwith, on the filing by the Plaintiffs of the bond, and on approving the bond according to the law, issue a Temporary Injunction in conformity with the law and the terms of this Order.

(Footnote added.) Beachsiders filed a Motion for Reconsideration and Dissolution, Clarification and/or Modification of Temporary Injunction; Alternatively for Findings of Fact and Conclusions of Law. The clerk's record does not reflect a ruling on the motion or any issued findings.

Beachsiders filed an interlocutory appeal challenging the Temporary Injunction and later, a Motion to Stay Enforcement of Section C of the Temporary Injunction, which this Court granted on August 10, 2023.

14

## Standard of Review and Applicable Law

The purpose of a temporary injunction "is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). Temporary injunctions are an extraordinary remedy and do not issue as a matter or right. *Id.* To obtain a temporary injunction, an applicant need not establish that it will prevail upon a final trial on the merits, but it must plead and prove that it (1) has a cause of action against the opposing party, (2) has a probable right on final trial to the relief sought, and (3) faces probable, imminent, and irreparable injury in the interim. *Id.*; *Clark v. Hastings Equity Partners, LLC*, 651 S.W.3d 359, 366 (Tex. App.—Houston [1st Dist.] 2022, no pet.). To establish irreparable injury, the applicant must show it cannot be "adequately compensated in damages or [] the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204. In other words, the applicant must establish it has no adequate remedy at law. *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984).

Although the decision whether to grant or deny a request for a temporary injunction is committed to the sound discretion of the trial court, once the court decides to grant injunctive relief, it must comply with Texas Rule of Civil Procedure 683, which governs the form and scope of injunctions and temporary restraining orders. *See* TEX. R. CIV. P. 683; *Clark*, 651 S.W.3d at 366 (discussing

15

Rule 683 requirements); *Conlin v. Haun*, 419 S.W.3d 682, 685–86 (Tex. App.—

Houston [1st Dist.] 2013, no pet.) (same). Rule 683 provides that a temporary

injunction order must state the specific reasons for its issuance and set the cause

for trial on the merits. *See* TEX. R. CIV. P. 683. Under Rule 683, a temporary

injunction order must specifically set forth the reasons the trial court believes

irreparable injury will result absent an injunction preserving the status quo pending

a trial on the merits and it must "describe in reasonable detail and not by reference

to the complaint or other document, the act or acts sought to be restrained."[14] [15]

TEX. R. CIV. P. 683; *Clark*, 651 S.W.3d at 366. These requirements are mandatory

and an order that violates Rule 683 "is subject to being declared void and

---

[14]    Texas Rule of Civil Procedure 683 states:

> Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

> Every order granting a temporary injunction shall include an order setting the cause for trial on the merits with respect to the ultimate relief sought. The appeal of a temporary injunction shall constitute no cause for delay of the trial.

TEX. R. CIV. P. 683.

[15]    "[T]he obvious purpose of [rule 683] is to adequately inform a party of what he is enjoined from doing and the reason why he is so enjoined." *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 744 (Tex. App.—Dallas 2011, no pet.) (citing *Schulz v. Schulz*, 478 S.W.2d 239, 244–45 (Tex. App.—Dallas 1972, no writ)).

16

dissolved." *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000); *see also Clark*, 651 S.W.3d at 366; *Conlin*, 419 S.W.3d at 686.

**Analysis**

In its second point of error, Beachsiders argues the temporary injunction should be declared void and dissolved for failure to satisfy the requirements of Texas Rule of Civil Procedure 683. Beachsiders argues the temporary injunction does not comply with Rule 683 because it does not state the reasons for its issuance or why the trial court believes irreparable injury will result absent the granting of the injunction.

Rule 683 mandates that an order granting a temporary injunction "shall set forth the reasons for its issuance" and "shall be specific in terms." TEX. R. CIV. P. 683. "The trial court must set forth specific reasons, not merely conclusory statements, in the order granting temporary injunctive relief." *Kotz v. Imperial Cap. Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.).[16] The reasons the court believes the applicant will suffer injury without the injunction "must be specific and legally sufficient, and not mere conclusory statements." *Indep. Cap. Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795 (Tex. App.—Dallas 2008, no pet.) (noting an injunction that "does not specify the facts the trial court

---

[16] *See Arkoma Basin Exploration Co., Inc. v. FMF Associates 1990–A Ltd.*, 249 S.W.3d 380, 389 n.32 (Tex. 2008) (defining "conclusory" as "expressing a factual inference without stating the underlying facts on which the inference is based") (citing *Black's Law Dictionary* 308 (8th ed. 2004)).

17

relied on[] make[s] the trial court's findings conclusory"). Mere recitations of harm are insufficient. *Stoner v. Thompson*, 553 S.W.2d 150, 151 (Tex. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.) ("The conclusion that the situation is harmful is not a reason why injury will be suffered if the interlocutory relief is not ordered. The failure to include in the order a reason why the court deems issuance of the writ proper for preventing injury to the applicant is reversible error.").

The temporary injunction here states that "based on Plaintiff's testimony and other evidence presented, the Court finds that [Beachsiders] has conducted business operations which have interfered with Plaintiff's private use and enjoyment of his residence." Beachsiders argues this "non-specific and factually unsupported recitation[]" does not satisfy Rule 683. We agree.

The temporary injunction does not state with specificity the reasons for its issuance, nor does it mention anywhere the reasons why the trial court concluded irreparable injury would result absent the granting of the injunction. These deficiencies render the order fatally defective. *See City of Corpus Christi v. Friends of the Coliseum*, 311 S.W.3d 706, 708 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.) ("When a temporary injunction is based in part on a showing that the applicant would suffer irreparable harm if the injunction is not issued, Rule 683 requires the order to state precisely *why* the applicant would suffer irreparable harm.") (emphasis in original); *Smart Auto. Servs. Inc. v. Muir*,

No. 13-20-00338-CV, 2021 WL 1567503, at *4 (Tex. App.—Corpus Christi–Edinburg Apr. 22, 2021, no pet.) (mem. op.) (holding temporary injunction's statement that "[Appellant's] actions have deprived [Appellee] of his right to use his GMC Pickup . . . for both personal and business reasons" did not "sufficiently state the reasons why [Appellee] would suffer irreparable harm if the temporary injunction was not granted").[17, 18]

---

[17] *See also Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56–57 (Tex. App.—San Antonio 2010, no pet.) (holding temporary injunction did not satisfy Rule 683 in stating that applicants "will suffer irreparable injury in their possession and use of the Subject Property in the event that the requested injunctive relief is not granted, that they have no adequate remedy at law, and that the requested injunctive relief is necessary to preserve the status quo pending final trial" because "[a]t most, this language characterizes by what means harm will occur unless Kotz is enjoined from taking possession and use of the subject property—but does not state or explain the reasons *why* irreparable injury will result absent an injunction.") (emphasis in original); *see also Int'l Broth. of Elec. Workers Local Union 479 v. Becon Const. Co., Inc.*, 104 S.W.3d 239, 244 (Tex. App.—Beaumont 2003, no pet.) (holding that injunction that stated "the Court finds that the Defendants have and continue to violate the provisions of Texas Labor Code § 101.152 causing irreparable harm to Becon Construction Company" does not reflect a reason why injury will be sustained or identify the probable injury that will occur unless injunction issues); *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 746–47 (Tex. App.—Dallas 2011, no pet.) (holding statement in injunction that unless appellant is "restrained and enjoined from taking direct or indirect action to promote its desire, intention, and purpose to ruin [appellee's] business in order to regain its leasehold and [appellee's] restaurant, including but not limited to demanding payment, taking actions to collect, or exercising any default rights in relations [sic] to the subject-Promissory Note and subject-License Agreement, and to continue such prejudicial acts, [appellee] will suffer irreparable harm for which there is no adequate monetary compensation" does not satisfy Rule 683's requirement that a temporary injunction "specify the reasons why the applicant will suffer irreparable harm for which there is no adequate remedy at law.").

19

Relying on *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, the Vaughans argue the temporary injunction satisfies Rule 683, because it states that the reason for its issuance is the interference by Beachsiders' "business operations" with Vaughan's "private use and enjoyment of his residence." 354 S.W.3d 887 (Tex. App.—Houston [1st Dist.] 2011, no pet.). *Intercontinental Terminals* was an appeal from a temporary injunction that allowed two Vopak entities certain use of a railroad track belonging to ITC, a competitor, during the pendency of litigation over the track use. *Id.* at 890.[19] ITC argued on appeal that the temporary

---

[18]   *Compare with IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 201 (Tex. App.—Fort Worth 2005, no pet.) (holding that when injunction stated that appellee showed appellants had possession of appellee's data, which was entitled to trade-secret protection, and were actively using data to compete with appellee, "the trial court's findings about appellants' possession and use of [appellee's] helicopter blade information constitute a reason that [appellee] would be harmed without injunctive relief."); *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.) (holding injunction sufficient when it stated former business partner's conduct prevented plaintiffs "from realizing the significant loan values in [] unique properties" and significantly impaired their ability to assist in paying amount owed under promissory note and to tender money into court's registry, and that plaintiffs' business plan and ability to obtain financing on certain properties were "adversely affected in a way that cannot be effectively measured in dollars"); *McGuire-Sobrino v. TX Cannalliance LLC*, No. 05-19-01261-CV, 2020 WL 4581649, at *4 (Tex. App.—Dallas Aug. 10, 2020, no pet.) (mem. op.) (holding injunction gave specific reasons for issuance by stating appellant wrongly exercised control over appellee's mailing list, used appellee's confidential client lists for his own benefit, used appellee's name for his own promotional purposes, and used appellee's digital assets for unauthorized promotion of content).

[19]   Vopak and ITC are storage and transport businesses. *Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 890 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

20

injunction "impermissibly alter[ed] the status quo" and was not supported by evidence of "probable, imminent, and irreparable harm and a probable right to recover." *Id.* The trial court's injunction in *Intercontinental Terminals* concluded that the harm to Vopak "was imminent 'because [ITC's] car restrictions are continuing and an embargo, one of which has already been entered providing Vopak's customers from shipping cars to Vopak, will likely occur again.'" *Id.* at 894. The trial court further concluded that "ITC's restrictions threaten to cause and will probably cause at least the following harm to Vopak: business disruption, loss of goodwill, loss of reputation in the marketplace, customer uncertainty, delays in servicing dock/sea customers, backlog costs, [and] demurrage fees[.]" *Id.* at 895. This explanation provides significantly more detail than the temporary injunction issued against Beachsiders, which does not state the reasons for its issuance, other than stating in conclusory fashion and without more that Beachsiders "has conducted business operations which have interfered with Plaintiff's private use and enjoyment of his residence." We thus find *Intercontinental Terminals* inapposite.

The Vaughans also argue the temporary injunction complies with Rule 683 because it states the trial court reached its conclusion "based on Appellee Eric Vaughan's testimony and other evidence presented at the temporary injunction hearing." But "[p]leadings and testimony do not satisfy the requirement that the

21

temporary injunction order must state the reasons for its issuance." *Courtlandt Place Historical Found. v. Doerner*, 768 S.W.2d 924, 925 (Tex. App.—Houston [1st Dist.] 1989, no writ) (ordering dissolution of temporary injunction that lacked reasons for its issuance even though applicant contended he pled and introduced evidence supporting issuance); *see also Moreno v. Baker Tools, Inc.*, 808 S.W.2d 208, 211 (Tex. App.—Houston [1st Dist.] 1991, no writ) (same); *Grounds v. First GroundRock Royalties, LLC*, 629 S.W.3d 674, 677 (Tex. App.—San Antonio 2021, no pet.) (same). Thus, any testimony elicited and exhibits admitted at the temporary injunction hearing cannot make up for the temporary injunction's failure to include specific reasons for its issuance. *See Home Asset, Inc. v. MPT of Victory Lakes Fcer, LLC*, No. 01-22-00441-CV, 2023 WL 3183322 at *2 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (mem. op.) ("[W]e cannot affirm a temporary-injunction order that does not comply with Rule 683 on the ground that the trial court nonetheless made a reasonable decision based on the underlying facts of the case.").

Because the temporary injunction fails to comply with the requirements of Rule 683, we conclude the order is void and must be dissolved.[20]

---

[20] Because of our disposition, it is not necessary to address Beachsiders' remaining issues. *See* TEX. R. APP. P. 47.1.

## Conclusion

We declare the temporary injunction order void, dissolve the injunction, and remand the case to the trial court for further proceedings.[21] We direct the clerk of this Court to issue the mandate immediately.  *See* TEX. R. APP. P. 18.6.

<div style="margin-left: 50%;">

Veronica Rivas-Molloy
Justice

</div>

Panel consists of Chief Justice Adams and Justices Landau and Rivas-Molloy.

---

[21]    This dissolution is without prejudice as to future relief the parties may seek.