NO. 07-01-0471-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

JANUARY 16, 2002

_____


SCOTT MAPLES, RACHEL MAPLES AND TBA, INC., APPELLANTS

V.

MUSCLETECH, INC., APPELLEE


_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-515,088; HONORABLE J. BLAIR CHERRY, JUDGE

_____

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.


ON MOTION FOR TEMPORARY STAY


In the proceeding underlying this interlocutory appeal, appellants Scott Maples, his wife Rachel Maples, and TBA, Inc. (TBA) asked us to stay a temporary injunction granted by the trial court. The basis of their request is that the bond set by the trial court is

inadequate to protect them from the potential damage they would suffer if it develops that the injunction was improperly granted. For reasons we later state, we overrule the request.

The underlying dispute centers on a licensing agreement executed in July 2000, between the Maples and Muscletech, Inc. (Muscletech). Under the agreement, Muscletech granted the Maples the right to use the Muscletech name to conduct retail sales of nutritional supplements and related products in exchange for a monthly licensing fee. The agreement also included a non-compete provision prohibiting the Maples from a variety of activities when the agreement was terminated. The text of this provision is set out below.[1] The Maples transferred their rights under the agreement to TBA.

As agents of TBA, the Maples opened a retail store in Olathe, Kansas, and conducted business under the agreement. In May 2001, TBA ceased making royalty payments under the agreement. The reason, they asserted, was that Scott Maples discovered a Canadian corporation was the owner of the registered trademark Muscletech.

Muscletech filed the underlying suit on August 31, 2001, and successfully sought a temporary injunction. The trial court issued the injunction *ex parte* against the Maples on the same day conditioned on Muscletech posting a $5,000 bond. Muscletech amended

---

[1]As an important part of the agreements contained herein, for the protection of the Muscletech name, logo, business reputation and commercial enterprises, Licensee agrees that for a period of 3 years from the date of the termination of this agreement that it will not directly or indirectly . . . solicit or accept orders for the sale, distribution, marketing or engage in any other activities similar in any way to that conducted by it under this agreement with regard to the goods or items in any way resembling products within the licensee's geographical area as herein described.

its petition to add Larry Maples and TBA as defendants and make them subject to the injunction. An amended injunction was signed on November 7, 2001, and the $5,000 bond was posted by Muscletech.

Appellants filed a motion to increase the bond on November 9, 2001. In their motion, they asserted that the $5,000 bond had no relation to the potential damages that might be suffered by them. They argued that enforcement of the injunction would require the store operated by appellants to close until the conclusion of the trial and posited that the only evidence before the court as to the amount of potential damages was that the store had a gross income of $25,000 to $30,000 per month. Because the trial on the merits was set for February 24, 2002, appellants concluded that enforcement of the injunction would result in a loss of at least $100,000 in revenue and the bond should be in at least that amount. The motion was denied on November 28, 2001, and this interlocutory appeal was perfected the next day. On December 7, we granted a temporary stay of enforcement of the injunction pending a hearing on the motion. We now consider whether to extend the temporary stay pending resolution of the interlocutory appeal.

Muscletech initially argued that TBA had forfeited its right to seek relief from this court because of a failure to pay franchise taxes. In support of that position, it cited sections 171.251-.252 of the Tax Code and provided a computer printout of records of the Comptroller of Public Accounts that indicated the taxes had not been paid. In response, appellants point out that forfeiture is not automatic and the record does not show a forfeiture of TBA's corporate privileges. Appellants also question the propriety of our

3

relying on a mere printout obtained from an internet site operated by the Comptroller. However, we need not further address that issue because we agree that the record does not show that TBA's corporate privileges were actually forfeited and only shows that as of December 5, 2001, it was "not in good standing" because it had not met all state tax requirements.

Citing Rule of Appellate Procedure 29.2, Muscletech next argues that appellants may not seek a stay from this court because the record does not show that it first attempted to obtain a stay from the trial court. Rule 29.2 authorizes a trial court to permit an order granting interlocutory relief to be superseded pending appeal of that order. It also provides for an appellate review as to whether a trial court abused its discretion in refusing to allow an order to be superseded. Tex. R. App. P. 29.2. However, we do not agree that the rule mandates a trial court refusal to supersede before we may make orders necessary to preserve the parties' rights pursuant to Rule 29.3. Rule 29.3 specifically addresses the limitation on our power to issue temporary orders and provides that we may not do so "if the appellant's rights would be adequately protected by supersedeas."

As we have noted, here, appellants contend that the trial court erred in setting a bond that was insufficient in amount to protect their respective interests. The determination of the adequacy of the bond set by the trial court in instances such as this one is to be made on a case-by-case basis based upon the record before the reviewing court. *Stone v. Griffin Communications and Security Systems, Inc.,* 53 S.W.3d 687, 696 (Tex.App.--Tyler 2001, no pet. h.)*.* In conducting such a review, we must bear in mind that

4

the amount of bond required on the issuance of a temporary injunction rests within the sound discretion of the trial court and will not be disturbed on appeal in the absence of an abuse of discretion.

The parties have not presented any authority addressing the showing necessary to support a motion for a temporary stay such as this.  The only case we have found directly addressing an analogous issue is *Lamar Builders, Inc. v. Guardian Sav. & Loan Ass'n*, 786 S.W.2d 789, 791 (Tex.App.--Houston [1st Dist.] 1990, no writ).  In that case, the court had occasion to consider former Rule of Appellate Procedure 43(c), the progenitor of current Rule 29.3.  The court noted there were no clear procedural prerequisites under Rule 43. However, noting the similarity of an action for temporary stay to an injunction to protect appellate jurisdiction under section 22.221 of the Texas Government Code (Vernon Supp. 2001) and former Rule of Appellate Procedure 121, the court opined, "logic dictates that to obtain temporary orders under Rule 43, a movant must make a clear showing that it is entitled to relief."  *Lamar Builders,* 786 S.W.2d at 791.  That showing might be made, the court said, by stating the relief sought, the basis for the relief, and setting forth the facts necessary to establish a right to the relief sought.  *Id.*

In support of their contention that the amount of the bond was clearly inadequate, appellants rely on the testimony of Scott Maples that the Kansas store had gross monthly sales of about $25,000, and they argue that this figure should be used to calculate the damages they might suffer as a result of the temporary injunction.  At oral argument, Muscletech challenged the adequacy of this evidence, positing that it was not sufficient

5

because it did not take into consideration expenses, such as employee salaries, and other necessary expenses incident to the operation of such a store, that would not be incurred if it was not operated pending trial. Appellants responded to this argument by reasoning that it was Muscletech's burden to produce any such offsetting expenses. We disagree.

As the *Lamar Builders'* court pointed out, it is the movant's burden in a proceeding such as this to make a clear showing that it is entitled to relief. In this instance, to show an abuse of discretion, it would be necessary to make a showing of likely actual losses if the store was required to cease operation pending trial. If we determined a showing of expected gross revenues was sufficient, we would be required either to ignore common knowledge and assume the store would have no expenses that would not be incurred during the closure, or place the burden on the non-movant to show the actual potential losses. In a context such as that present here, namely, to stay a temporary injunction issued after a hearing, policy considerations weigh strongly in favor of placing that burden upon the movant. The abbreviated timeline within which such matters are heard and decided does not allow opposing parties to conduct the discovery necessary to make the kind of showing advocated by appellants here. As the movants, appellants were the only parties with access to the information required to establish, with some degree of accuracy, the actual losses that might result from enforcement of the injunction.

In sum, without a clear showing of the potential losses that might result from the challenged injunction, we have no adequate basis on which to conclude that the trial court abused its discretion in setting the bond at $5,000. *See Stone*, 53 S.W.3d at 696. For that

6

reason, we overrule appellants' motion for the immediate issuance of an order staying the injunction.

Per Curiam

Publish.