# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00022-CV

**Topheavy Studios, Inc. and Gathering of Developers, Inc., Appellants**

**v.**

**Jane Doe, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN-404142, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this accelerated appeal, we must determine whether the district court abused its discretion by issuing a temporary injunction prohibiting appellants, Topheavy Studios (Topheavy) and Gathering of Developers (Developers), from continuing to manufacture and distribute a video game until it issued a final judgment on the merits.[1] We are also asked to determine whether the trial court erred by granting appellee's motion to proceed under the pseudonym Jane Doe. In three issues, Topheavy contends that the trial court erred in granting the temporary injunction because (1) the evidence establishes that Doe has no probable right to recovery on any of her causes of action; (2) Doe cannot demonstrate a probable, imminent, and irreparable injury; and (3) the injunction

---

[1] Topheavy produced the video game and Developers distributed it. Because the issues in this case apply equally to both appellants, we will refer to them collectively as Topheavy. When necessary to distinguish their individual roles in the underlying suit, we will refer to each appellant by name.

constitutes an unconstitutional prior restraint of protected speech. Additionally, Topheavy argues that the trial court erred by (4) enjoining conduct occurring outside the territorial jurisdiction of Texas, (5) allowing Doe to proceed under a pseudonym, and (6) setting the bond too low to compensate Topheavy if the injunction is ultimately dissolved. Because we hold that the district court did not abuse its discretion, we affirm the injunction order.

## BACKGROUND

In March 2003, Jane Doe and two of her friends went to South Padre Island for spring break. Doe was seventeen years old at the time. When the young women arrived, they began to take part in the annual spring break festivities that take place on the island. Doe admits that she illegally drank alcohol while on the island and that she obtained and used a fake California identification card, which falsely stated that she was twenty-one years old.

Topheavy was on the island to film footage of young women on spring break for use in a forthcoming video game entitled "The Guy Game." The Guy Game is a trivia contest that rewards players for correct responses by showing them images of topless women. The cover of the box explains:

> The Guy Game puts you in the world's wildest party spot for the steamiest Spring Break action ever! Shot live at South Padre Island, this Red-Hot Trivia Challenge lets you play with over 60 smokin' coeds during Spring Break Insanity, as they proudly show off their "assets" for your personal enjoyment. You bring the party and we'll supply the game—YOU'LL SCORE EVERY TIME!

The game is designed to be played on either the Sony PlayStation2 or the Microsoft Xbox.

2

Topheavy set up a stage for filming on a public street adjacent to a popular local bar. Its plan was to approach young women and offer them a chance to win a small amount of money if they agreed to participate in the filming of the trivia game. If a woman agreed to participate, she was asked to display identification proving that she was at least eighteen years old, sign a "Model Release," and fill out a questionnaire. She was then placed with a small group of other contestants until it was their turn to go on stage. When the group appeared on stage, each woman was asked a series of trivia questions. A woman received points for correct answers but was instructed to expose her breasts for each incorrect answer. As Topheavy had planned, a large and rowdy crowd of onlookers gathered around the stage and on the balconies of nearby bars to watch the filming.

While waiting in line to enter a bar near the stage, Doe and her friends were approached by a Topheavy representative seeking contestants for the game. Doe agreed to be a contestant and signed the release with the false name that appeared on her fake identification card. She also displayed the fake identification card to prove that she was at least eighteen. On her questionnaire she asserted that she lived in San Diego and that she attended the University of California at Los Angeles. She listed a fictitious address in San Diego, but the zip code she provided was for Larkspur, a city near San Francisco. The expiration date on the identification card did not match the birth date listed on the card. Doe listed an Austin, Texas, phone number.[2] Additionally, the release contained scratch-outs where Doe had begun to write her actual identification information. Topheavy allowed Doe to participate in the contest despite the irregularities on the

___

[2] The phone number was Doe's actual cell phone number and was also the only accurate information she provided, other than her first name, on either the release or the questionnaire.

3

identification card and release. While on stage, Doe exposed her breasts to the crowd at least three times. Doe received twenty dollars in "prize money" for her participation. She was not provided with a copy of the release.

The Guy Game was released for sale in August 2004. Shortly thereafter, Doe was informed by her brother that the game contained multiple images of her exposing her breasts. Doe also discovered that her likeness was being used to market the game on the internet. Doe asserts that she did not realize and was not told by Topheavy that they were filming the contest in South Padre in order to obtain footage for an internationally distributed video game. She sued Topheavy for (1) invasion of privacy based on both misappropriation of her likeness and the disclosure of private and embarrassing facts; (2) negligence; (3) negligence per se; (4) intentional infliction of emotional distress; (5) unjust enrichment; and (6) civil conspiracy. In December 2004, Doe requested and received a temporary restraining order preventing any further distribution of the game. In January 2005, a hearing was held, and the trial court issued a temporary injunction and granted Doe's motion to proceed under a pseudonym. Topheavy then filed this accelerated interlocutory appeal seeking a dissolution of the temporary injunction.[3]

## STANDARD OF REVIEW

A temporary injunction's purpose is to preserve the status quo of the litigation's subject matter pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993); *Electronic Data Sys. Corp. v. Powell*,

---

[3] Currently, the trial on the merits in this case is set for August 29, 2005.

508 S.W.2d 137, 139 (Tex. Civ. App.—Dallas 1974, no writ). A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru*, 84 S.W.3d at 204. To obtain a temporary injunction, the applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*.

To establish a probable right to recovery, an applicant need not prove that she will ultimately prevail in the litigation; rather, the applicant must show she has a cause of action for which relief may be granted. *Universal Health Servs. v. Thompson*, 24 S.W.3d 570, 576 (Tex. App.—Austin 2000, no pet.). A party proves irreparable harm by showing an injury for which there can be no real legal measure of damages or for which damages cannot be ascertained with a sufficient degree of certainty. *Id*. at 577. In weighing these two elements, we apply a "sliding scale" under which clear evidence establishing one of the elements will result in a less stringent requirement of proof of the other element. *See Ebony Lake Healthcare Ctr. v. Texas Dep't of Human Servs.*, 62 S.W.3d 867, 874 (Tex. App.—Austin 2001, no pet.).

The decision to grant or deny the temporary injunction lies within the sound discretion of the trial court; we will not disturb that decision absent a clear abuse of discretion. *Butnaru*, 84 S.W.3d at 204; *Thompson*, 24 S.W.3d at 576. This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. *Thompson*, 24 S.W.3d at 576. Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. *Id*.

5

**DISCUSSION**

Topheavy contends that the district court erred in granting the temporary injunction because (1) the evidence establishes that Doe has no probable right to recovery on any of her causes of action; (2) Doe cannot demonstrate a probable, imminent, and irreparable injury; and (3) the injunction constitutes an unconstitutional prior restraint of protected speech. Topheavy also argues that the district court erred by (4) enjoining conduct outside the territorial jurisdiction of Texas, (5) allowing Doe to proceed under a pseudonym, and (6) setting the bond too low.

### Probable right to recovery

Doe alleges that Topheavy invaded her privacy by misappropriating her likeness. The three elements of invasion of privacy by misappropriation are: (1) the defendant appropriated the plaintiff's name or likeness for the value associated with it; (2) the plaintiff can be identified from the publication; and (3) there was some advantage or benefit to the defendant. *Express One Int'l, Inc. v. Steinbeck*, 53 S.W.3d 895, 900 (Tex. App.—Dallas 2001, no pet.). Liability for such an invasion of privacy will arise if the defendant appropriates, for its own benefit, the commercial standing, reputation, or other values associated with the plaintiff's likeness. *See id*. Generally, an appropriation becomes actionable when the name or likeness is used "to advertise the defendant's business or product, or for some similar commercial purpose." *Id*. (quoting Restatement (Second) of Torts § 652C, cmt. b (1977)).

It is clear from the record that Doe has put forth evidence as to each of the three elements of invasion of privacy by misappropriation. However, Topheavy insists that there was no

6

tortious appropriation because Doe consented to Topheavy's use of her likeness. Doe contends that, because she was a minor at the time she signed the release, her consent is voidable.

In Texas, a contract between an adult and a minor is voidable at the option of the minor. *Prudential Bldg. & Loan Ass'n v. Shaw*, 26 S.W.2d 168, 171 (Tex. 1930) (minor may set aside such contracts and recover consideration paid, but must restore consideration received in its present condition).[4] A minor who fraudulently misrepresents her age to induce another to enter into a contract cannot void the contract. *Youngblood v. State*, 658 S.W.2d 598, 599 (Tex. Crim. App. 1883); *Evans v. Henry*, 230 S.W.2d 620, 621 (Tex. Civ. App.—San Antonio 1950, no writ). Therefore, a party seeking to prevent another party from voiding a contract on the basis of minority must establish that (1) the minor misrepresented her age, (2) the minor intended for the other party to rely on the misrepresentation, and (3) the party was injured as a result of its actual and justifiable reliance. *See Ernst & Young, LLP v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (setting forth elements of a fraud claim). "A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party." *Coastal Bank SSB v. Chase Bank*, 135 S.W.3d 840, 843 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

In this case, Doe did misrepresent her age, and Topheavy actually relied on that misrepresentation. However, if Topheavy's reliance was not justified, then there was no fraudulent misrepresentation, and Doe may void the contract. *Id.* Jeff Spangenburg, Topheavy's Chief

---

[4] A release is a contract under Texas law. *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 178 (Tex. 1997).

Executive Officer, testified that the company was aware of the possibility that minors would be present during the filming. Accordingly, numerous protocols were instituted to prevent a minor from taking part in the game. He testified further that Topheavy's concern regarding fake identification cards and driver's licenses prompted it to hire people to verify identification information at the contest and afterwards. According to Spangenburg, if there was any doubt regarding a contestant's age, Topheavy erred on the side of caution and did not use that contestant in the game.

Doe admits that she provided Topheavy with a fake identification card. However, the card, the scratch-outs on the release, and her answers on the questionnaire were suspicious. Nevertheless, Topheavy did not question or verify any of the information that Doe provided prior to using her image in the video game. Spangenburg testified that if he had known that the zip code Doe listed did not correspond with the city she listed on her release, or that the street she supposedly lived on did not exist, he would have been suspicious and would have attempted to verify her information. He explained that Doe's information was not verified because she did not look or act like she was as young as seventeen.

Under these circumstances, we conclude that fact issues exist regarding (1) whether Topheavy exercised ordinary care and reasonable diligence in protecting its interests in the subject matter of the release—the right to use Doe's likeness in the video game; and (2) whether it justifiably relied on Doe's misrepresentation. Consequently, we cannot determine as a matter of law whether Doe may void the release based on her minority at the time of contract. Therefore, we hold that the district court did not abuse its discretion by finding that Doe may be entitled to relief for invasion of privacy by misappropriation. *Thompson*, 24 S.W.3d at 576.

8

Topheavy contends that Doe cannot recover for an invasion of privacy because it filmed her while she was in a public place. Essentially, Topheavy avers that Doe had no expectation of privacy because the footage included in the video game was taken in a public place. *See ABC, Inc. v. Gill*, 6 S.W.3d 19, 28 (Tex. App.—San Antonio 1999, pet. denied); *see also McNamara v. Freedom Newspapers, Inc.*, 802 S.W.2d 901, 904-05 (Tex. App.—Corpus Christi 1991, writ denied). Neither of the cases cited by Topheavy involved an invasion of privacy by misappropriation. While both *Gill* and *McNamara* held that a news organization could either broadcast or publish an image taken in a public place without risking liability for invasion of privacy, they did not consider whether that principle applied to a private entity that attempts to use the image for commercial gain. *See ABC*, 6 S.W.3d at 28; *see also McNamara*, 802 S.W.2d at 904-05.

Topheavy also relies on *Lane v. MRA Holdings, LLC*, 242 F. Supp. 2d 1205, 1219 (M.D. Fla. 2002), to support its belief that the public nature of Doe's exposure eliminated any requirement that it obtain consent prior to incorporating her image into the video game. In *Lane,* a seventeen-year-old girl and her companion were approached by stranger with a video camera who asked them to expose their breasts. *Lane*, 242 F. Supp. 2d at 1209-10. The girls complied. *Id*. Subsequently, the minor girl discovered that her image was included in and used to market a "Girls Gone Wild" video. *Id*. at 1210. She then sued the video's producer for commercial misappropriation of her likeness. *Id*. at 1211. The *Lane* court explained that a Florida statute explicitly states that a minor lacks the capacity to consent to the use of her likeness for compensation. *Id*. at 1218-19. However, it observed that there was no such statute addressing whether a minor could give valid consent when there was no compensation involved. *Id*. at 1219.

Based on the principle of *expressio unius*[5] the court concluded that a minor could validly consent to the use of her likeness when no compensation is provided. *Id.* The holding in *Lane* is unique to the facts of that case and the Florida statute governing the capacity of a minor to consent to the use of her image in that state. It does not preclude possible recovery for a minor in this state, even though she was filmed while in a public place. The district court did not abuse its discretion by holding that Doe has a probable right to relief on her claim of invasion of privacy by misappropriation. We overrule Topheavy's first issue.[6]

### *Irreparable harm*

Topheavy insists that Doe did not prove that the injunction would prevent an irreparable injury because any potential harm stemming from the distribution of the game has already occurred due to the 80,000 copies of the game currently in circulation. A party proves irreparable harm by showing an injury for which there can be no real legal measure of damages or for which damages cannot be ascertained with a sufficient degree of certainty. *Thompson*, 24 S.W.3d at 577. Although she is also seeking damages, Doe testified that her foremost concern was that she obtain a permanent injunction that would prevent the distribution of any remaining copies of the video game that contains her likeness. Essentially, Doe is seeking to minimize any damage the game may

---

[5] *Expressio unius* is a principle of statutory construction that allows a reviewing court to infer that the expression of one thing suggests the exclusion of others. William N. Eskridge, Jr. & Philip P. Frickey, *The Supreme Court 1993 Term: Forward: Law as Equilibrium*, 108 Harv. L. Rev. 26, 97 (1994).

[6] Because we hold that the trial court did not abuse its discretion by concluding that Doe established a probable right to relief on her claim of invasion of privacy by misappropriation, we need not address whether she proved a probable right to relief on her other causes of action.

cause her now and in the future. Spangenburg testified that, despite the fact that he now knows that Doe was seventeen when she was filmed for the video game, he would continue to release the game unless the court instructed him otherwise.[7] If the remaining copies of the game could be distributed prior to a final judgment on the merits, it would effectively undermine the purpose of the lawsuit from Doe's perspective. More importantly, the mere fact that Doe has already been injured does not necessarily mean that further distribution of the game would not exacerbate the preexisting injury or create new injuries altogether. Therefore, we hold that the district court's finding that the injunction was necessary to prevent additional irreparable injury was not an abuse of discretion. We overrule Topheavy's second issue.

### *Unconstitutional prior restraint*

Topheavy contends that, even if Doe could prove a probable right to relief and an irreparable injury, the trial court still erred in issuing the temporary injunction because it constitutes an unlawful prior restraint of speech protected by both the U.S. and Texas Constitutions. U.S. Const. amend. I; Tex. Const. art. I, § 8. However, we need not address whether the injunction is an unlawful prior restraint because the first amendment provides no right to use an individual's likeness to promote a commercial product when the individual does not consent to the use. *See Cumings v. Sony Music*, 2003 U.S. Dist. LEXIS 15007, at \*16 (S.D.N.Y. 2003); *see also Gritzke v. MRA Holdings, L.L.C.*, 2003 U.S. Dist. LEXIS 9307, at \*13 (N.D. Fla. 2003). As we discussed earlier, a fact issue exists regarding the validity of Doe's consent. Additionally, there is evidence in the

---

[7] There are approximately 25,000 copies of the video game that have not been shipped to retailers.

record establishing that Topheavy was using Doe's likeness to market the game on the internet. Thus, it was not an abuse of discretion for the district court to conclude that the issuance of a temporary injunction in this case would not offend the first amendment. We overrule Topheavy's third issue.

### *Does the injunction exceed the trial court's territorial jurisdiction?*

In its fourth issue, Topheavy asserts that if the injunction was premised upon a penal code violation, it cannot exceed the territorial jurisdiction of Texas. While this contention may be true, it assumes that the district court issued the injunction based on Doe's negligence per se claim that Topheavy inexcusably violated the state's obscenity laws. *See* Tex. Pen. Code Ann. §§ 43.25, .26 (West Supp. 2004-05) (criminalizing certain sexual performances by children and possession or promotion of child pornography). This is not necessarily the case. As we discussed previously, the injunction could have been based on Doe's probable right to relief and irreparable injury associated with her claim of invasion of privacy by misappropriation. *Butnaru*, 84 S.W.3d at 204.

Additionally, the injunction does not appear to exceed the territorial jurisdiction of Texas. Topheavy complains that the district court's order, prohibiting any further distribution of the video game, is directed at parties outside of Texas because the remaining copies of the video game are not located in Texas. The fact that the games are not stored here and that some of Topheavy's and Developers' agents or representatives are located in other states is irrelevant because the injunction is directed at Topheavy and Developers, two Texas corporations. The district court did not exceed its jurisdiction by ordering Texas parties to control the actions of their employees or agents located outside of Texas. We overrule Topheavy's fourth issue.

12

### Pseudonym

Topheavy argues that the district court erred by allowing Doe to proceed under a pseudonym. Topheavy suggests that the order prevents it from being able to adequately investigate Doe's claims. Accordingly, it claims that the trial court's decision amounts to an unconstitutional gag order. However, the trial court's granting of Doe's motion to proceed under a pseudonym is an interlocutory order that is not appealable at this time. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (West Supp. 2004-05).

Even if the order were appealable, it does not appear that it would hinder Topheavy's ability to prepare an adequate defense. The order specifically allows for full discovery and states that Doe's true name may be used in depositions and in the investigation of the case as long as her name is given to only those individuals who must know her name in order to fully participate in the investigation. Essentially, the order only prevents the disclosure of Doe's true name to the media or in any public forum. We overrule Topheavy's fifth issue.

### Sufficiency of the bond

In its sixth and final issue, Topheavy complains that the district court erred in setting the amount of Doe's bond at only $10,000. The trial court is required to set a bond, executed by the applicant, when it grants a temporary injunction. Tex. R. Civ. P. 684. The purpose of such a bond is to protect the enjoined party from any possible damages occurring as a result of an improperly granted injunction. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 203 (Tex. App.—Dallas 2005, no pet. h.); *Bayoud v. Bayoud*, 797 S.W.2d 304, 312 (Tex. App.—Dallas 1990,

13

writ denied). The determination of the adequacy of the bond set by the trial court is to be made on a case-by-case basis considering the record before the reviewing court. *IAC, Ltd.*, 160 S.W.3d at 203; *Maples v. Muscletech, Inc.*, 74 S.W.3d 429, 431 (Tex. App.—Amarillo 2002, no pet.). The amount of a bond is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of that discretion. *IAC, Ltd.*, 160 S.W.3d at 203; *Khaledi v. H.K. Global Trading, Ltd.*, 126 S.W.3d 273, 286 (Tex. App.—San Antonio 2003, no pet.).

At the injunction hearing, Spangenburg testified that Topheavy had spent $1,400,000 to produce the game. When asked specifically what losses, besides the production costs, he expected as a result of the injunction, he stated, "It's really hard to say at this particular time. Like I said, Christmas time is the biggest selling season of the year for the . . . game industry, and because we were not allowed to refill orders, there's definitely lost sales." However, he conceded that, when the temporary restraining order was issued on December 20, 2004, all Christmas orders had been shipped. Spangenburg estimated that Topheavy had sold somewhere between sixty and eighty thousand copies of the game prior to the injunction.

Topheavy introduced no evidence regarding the profit margin on the sale of each game. Nor did it provide any estimates of projected sales. Spangenburg alluded generally to calls he had received from people looking for the game, but he did not offer any specific facts pertaining to lost sales as a result of the injunction. Under these circumstances, and considering Spangenburg's admission that losses resulting from the injunction were difficult to calculate, we cannot conclude that the district court abused its discretion by setting the bond amount at $10,000. We overrule Topheavy's sixth issue.

**CONCLUSION**

Because we hold that the district court did not abuse its discretion, we affirm the temporary injunction order.

_____

Bea Ann Smith, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed:   August 11, 2005